IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. _____

ZUMA SEGUROS, CA

      Plaintiff,

v.

WORLD JET DELAWARE, INC.,
a Delaware corporation,
DON WHITTINGTON, an individual

      Defendants.
_____/

## COMPLAINT

Plaintiff, ZUMA SEGUROS, CA, sues Defendant, WORLD JET DELAWARE, INC., a Delaware corporation, DON WHITTINGTON, an individual and alleges as follows:

### I. JURISDICTION

1.    Plaintiff is a Venezuelan company with its principal place of business in Maracaibo, Republic of Venezuela.

2.    Defendant, WORLD JET DELAWARE, INC., ("World Jet") is a Delaware corporation with its principal place of business in Broward County, Florida.

3.    Upon information and belief, Defendant, DON WHITTINGTON, ("D. Whittington") is a resident of Broward County, Florida.

4.    The Court has jurisdiction over the subject matter of this case pursuant to 28 U.S.C. § 1332 as Plaintiff is completely diverse from Defendants and the amount in

controversy exceeds the sum of $75,000.00 exclusive of interest, costs and attorney's fees. Supplemental jurisdiction exists over any state law claims pursuant to 28 U.S.C. § 1391(a) and (c).

5. The Court has personal jurisdiction over Defendants because World Jet's principal place of business is in Broward County, Florida, D. Whittington is a resident of Florida and both Defendants conduct continuous and systematic business in Florida.

6. Venue is proper in this district pursuant to 28 U.S.C. § 1391(a) because the facts giving rise to the cause of action occurred in this District, more specifically in Miami-Dade County.

7. All conditions precedent to the bringing of this lawsuit have occurred, been excused or have otherwise been waived.

8. Plaintiff has retained the law firm of Vazquez & Associates (the "Firm") to act as its legal counsel in this case and has agreed to pay the Firm attorney's fees and costs for the Firm's services.

## II.  FACTUAL ALLEGATIONS

9. On or about September 1, 2011, World Jet entered into a contract to sell to JC Partners, Corp., a certain aircraft identified as a 1987 British Aerospace, Hawker BAE-125-800A, Serial Number 258068, registration N606 (the "Aircraft"). A true copy of the purchase agreement between the World Jet and JC Partners, Corp. is attached hereto as Exhibit "A" (the "Purchase Agreement").

10. Among other things, the Purchase Agreement requires World Jet to deliver the Aircraft with new paint, new interior and more importantly, fresh inspections

("Inspections"). The Inspections are a condition precedent to rendering the Aircraft "airworthy" and therefore safe and legal to fly under the provisions of the Federal Aviation Administration ("FAA")

11. On or about September, 2013, with the knowledge and consent of World Jet, Plaintiff purchased from JC Partners, Corp. the rights and obligation of JC Partners, Corp., to the Purchase Agreement.

12. On October 25, 2013, World Jet entered into an agreement with Plaintiff for Plaintiff to perform the balance of its obligations under the Purchase Agreement by (A) making a $200,000.00 payment on November 9, 2013; and (B) paying the balance of the funds due under the Purchase Agreement by December 21, 2013. A true copy of the October 25, 2013, Agreement between Plaintiff and World Jet is attached hereto as Exhibit "B" (the "October 25 Agreement").

13. Plaintiff made the additional $200,000.00 payment to World Jet for a total paid to World Jet for the Aircraft to that moment of $1,650,000.00 (the "Deposit").

14. Thereafter, World Jet, agreed to grant Plaintiff until February 14, 2014, within which to pay the balance of the funds due the Aircraft under the Purchase Agreement. A true copy of the payment extension deadline is attached hereto as Exhibit "C" (the "Extension Deadline").

15. The Purchase Agreement, the October 25 Agreement and the Extension Deadline, collectively (the "Contract Documents").

16. Prior to the February 14, 2014 scheduled closing date ("Closing"), Plaintiff contacted World Jet to inspect the Aircraft (which at that point was at World Jet's hangers in Fort Lauderdale Executive Airport) and its corresponding maintenance

manuals, record of previous inspections and evidence of compliance with FAA airworthiness directives and special bulletins (collectively "Log Books"). The Log Books are necessary to determine whether all inspections are up to date and complete, therefore rendering the Aircraft airworthy and safe, which was expressly provided for in the Purchase Agreement.

17. The FAA has strict regulations governing maintaining current Logbooks. More specifically, registered aircraft owners and operators are required to maintain maintenance records (which are kept in the Aircraft's Log Books) in accordance with 14 C.F.R. § 91.417. The records/Log Books, must be produced for inspection in a *reasonable amount of time* when requested by the FAA, NTSB or law enforcement. See 14 C.F.R. § 91.417. When an aircraft owner or operator fails to produce his/her aircraft logbooks, the FAA can initiate an enforcement action, as was the case in **United States v. Intercon Leasing , Inc.,** 617 F. Supp. 323, 328-329 (S.D. Fla. 1985).

18. Despite Plaintiff's repeated requests, Defendants refused to provide the Logbooks with the records for the Aircraft. Prior to the Closing, Plaintiff made repeated attempts and requests for Defendants to provide it access to the Logbooks. Plaintiff even went as far as sending one of its of company representatives from Venezuela to Defendants' place of business to inspect and confirm the existence of the Logbooks. Plaintiff's representative was directed by D. Whittington to inspect the Logbooks at a certain maintenance shop located near World Jet's business. Upon requesting the Logbooks from said maintenance shop, Plaintiff's representative was told that they did not have the Logbooks. Plaintiff's representative returned to World Jet's place of business to, once again question D. Whittington regarding the whereabouts of the

4

Logbooks and maintenance records. At that time, D. Whittington had left the office. Repeated calls and correspondence went unanswered.

19. As of the date of this Complaint, the Contract Documents gives Plaintiff the right to receive title to the Aircraft from World Jet. Nonetheless, according to a title search of the FAA records, World Jet had executed an Aircraft Bill of Sale on September 18, 2013, to a certain William Whittington (assumed to be a family member of D. Whittington). Said Bill of Sale was filed with the FAA Registry as Doc. ID# 0375 as early as October 17, 2013 to William Whittington evidencing transfer title of the Aircraft (the "Whittington Sale"). See copy of the title search attached hereto as Exhibit "D".

20. As the party with the right to purchase the Aircraft and having delivered to World Jet a sum greater than $1,650,000.00 Million Dollars, Plaintiff is entitled to receive the benefit of any bargain World Jet obtained from the Whittington Sale. Specifically, Plaintiff is entitled to set off from sums owed to World Jet any funds that Defendants obtained in the Whittington Sale. Similarly, Plaintiff is entitled to receive from Defendants any funds obtained by them in the Whittington Sale that exceed the sum owed by Plaintiff under the Contract Documents.

21. Given, Plaintiff's right to the Aircraft, World Jet was obligated to carry out the sale in a commercially reasonable manner and to provide Plaintiff with an accounting of the sale. However, instead Defendants decided to sell the Aircraft to which Plaintiff has a right to title under the Contract Documents, and pocketed the proceeds of said sale depriving Plaintiff of the Aircraft and a his Deposit.

22. Nevertheless, Plaintiff believes that the Whittington Sale was not carried out in a commercially reasonable manner and that Plaintiff's consequently will not be

able to obtain the benefit of the Whittington Sale. This assumption is supported by Defendants continuing to falsely extract monies from Plaintiff, in order to grant further closing extensions, namely $200,000.00 on October 25, 2013. In fact, World Jet's receipt of Plaintiff's $200,000.00 was negotiated and provided, well over eight (8) days after World Jet had consummated the sale of the aircraft to the above noted third party, ie. the Whittington Sale.

### Count I - Breach of Contract
### against World Jet

23. Plaintiff re-alleges the allegations of Paragraphs 1 through 22 as if fully set forth herein.

24. As Plaintiff has the right to clear title to the Aircraft pursuant to the Contract Documents, World Jet had the obligation to dispose of the Aircraft in a commercially reasonable manner and to account to Plaintiff for the sums it derived from the Whittington Sale.

25. World Jet has breached its obligations under the Contract Documents by, among other thing, failing to give Plaintiff access to the Aircraft's Logbooks and records and before the fact, selling the Aircraft to a third-party in a manner that is not commercially reasonable and without providing an accounting to Plaintiff.

26. As a direct and foreseeable consequence of World Jet's breach, Plaintiff has suffered damages, including, among other damages, loss of his Deposit, and lost profits for its inability to use the Aircraft.

WHEREFORE, Plaintiff requests that a judgment be entered against World Jet for compensatory damages, attorney's fees, prejudgment and post-judgment interest, costs and any additional relief that the Court may deem appropriate.

<h3 style="text-align:center"><u>Count II - Accounting<br>against World Jet</u></h3>

27.     Plaintiff re-alleges the allegations of Paragraphs 1 through 26 as if fully set forth herein.

28.     Prior to the filing of this lawsuit, Plaintiff and World Jet had a contractual relationship that involved extensive and complicated accounts and it is not clear that Plaintiff's remedy at law is as full, adequate and expeditious as it is in equity.

29.     Moreover, when World Jet undertook the task of selling the Aircraft to which Plaintiff had a contractual right to under the Contract Documents. As a result, since Plaintiff had made a substantial deposit towards the Aircraft and had a right to title of the same Aircraft, World Jet owed a fiduciary duty to Plaintiff when it sold the Aircraft, and consequently owes to Plaintiff an accounting of the transactions, the Deposit and any profit derived from the Whittington Sale.

WHEREFORE, Plaintiff requests that the Court order an accounting of the transactions between Plaintiff and World Jet as well as World Jet's transactions with third-parties regarding the Aircraft, and any additional relief that the Court may deem appropriate.

## Count III – Fraud in the Inducement
## against World Jet

30.     Plaintiff re-alleges the allegations of Paragraphs 1 through 22 as if fully set forth herein.

31.     Plaintiff files this count as an alternative to the previous counts.

32.     On October 25, 2013, World Jet specifically represented to Plaintiff that Plaintiff would obtain title to the Aircraft by making the required additional $200,000.00 deposit under the Agreement. This representation was material in Plaintiff entering into and continuing with the Agreement to purchase the Aircraft.

33.     World Jet made this representation knowing that it was false, as Defendants had consummated the sale of the Aircraft to a third party eight days before making the representation to Plaintiff on October 25, 2013.

34.     World Jet t intended that Plaintiff rely on its representation to obtain title to the Aircraft pursuant to the terms agreed upon on October 25, 2103, and that it would induce Plaintiff to make the Deposit to World Jet.

35.     Plaintiff suffered damages as a result of World Jet's representation including loss of the Deposit and loss of any profit that could have been derived from the use and sale of the Aircraft.

WHEREFORE, Plaintiff requests that this Court enter judgment against World Jet and award Plaintiff his damages as a consequence of World Jet's actions, including attorneys fees and costs, and any additional relief that the Court may deem just and appropriate.

## Count IV – Fraudulent Misrepresentation
## against D. Whittington

36. Plaintiff re-alleges the allegations of Paragraphs 1 through 35 as if fully set forth herein.

37. On October 25, 2013, D. Whittington, as an individual and for himself, specifically made representations to Plaintiff regarding being able to transfer good and clear title to the Aircraft to Plaintiff. D. Whittington, as an individual and for himself, also represented that World Jet would sell the Aircraft to Plaintiff. These representations were material in Plaintiff entering into and continuing with the Agreement to purchase the Aircraft with World Jet.

39. D. Whittington, made these representation knowing they were false when made, as Defendants had consummated the sale of the Aircraft to a third party eight days before making the representation to Plaintiff on October 25, 2013.

40. D. Whittington, as an individual and for himself, intended that Plaintiff rely on the representations to obtain title to the Aircraft and that it would induce Plaintiff to make the Deposit to World Jet.

41. Plaintiff suffered damages as a result of D. Whittington's representations including loss of the Deposit and loss of any profit that could have been derived from the use and sale of the Aircraft.

WHEREFORE, Plaintiff requests that this Court enter judgment against D. Whittington and award Plaintiff his damages as a consequence of D. Whittington's actions, including attorneys fees and costs, and any additional relief that the Court may deem just and appropriate.

JURY TRIAL REQUEST

Plaintiff requests a trial by jury with respect to all matters that are so triable.

Dated:  13th day of July, 2015.

                Respectfully submitted,

                VAZQUEZ & ASSOCIATES
                200 South Biscayne Boulevard
                Suite 4310
                Miami, Florida 33131
                Tel:     305-371-8064
                Fax:    305-371-4967

            By: /s/ Gerardo A. Vazquez, Esq.
                Gerardo A. Vazquez
                 Florida Bar No. 006904