# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA
### MIAMI DIVISION

### CASE NO. 15-22626-CIV-GOODMAN
### [CONSENT CASE]

ZUMA SEGUROS, CA,

      Plaintiff,

v.

WORLD JET OF DELAWARE, INC.,

      Defendant.

_____/

## ORDER ON SUMMARY JUDGMENT MOTION

    This is a case about a plane. Specifically, it is about the sale of a 1987 British Aerospace, Hawker BAE-125-800A, Serial Number 258068, registration N606 ("aircraft"). However, no one is able to "pack up" or "fly away"[1] on this grounded aircraft. In fact, "leaving on a jet plane"[2] is out of the question until the parties resolve their comparatively unpleasant dispute over the purchase of the aircraft.[3]

---

[1]    FRANK SINATRA, *Come Fly With Me,* on COME FLY WITH ME (Capitol Records 1958).

[2]    PETER, PAUL, AND MARY, *Leaving on a Jet Plane,* on ALBUM 1700 (Warner Bros.-Seven Arts 7340 1967).

[3]    This is not a run-of-the-mill lawsuit in which parties make allegations to support their claims or defenses. Instead, this lawsuit is more acrimonious than a garden-variety dispute that has morphed into litigation. For example, the Court was presented with a motion to strike an amended witness list because it added Plaintiff Zuma Seguros, CA's ("Plaintiff" or "Zuma") attorney, Gerardo Vazquez ("Vazquez"), who was then

World Jet moves for summary judgment on all counts of Zuma's Complaint arising out of this aircraft sale gone awry. [ECF No. 55]. By way of summary, Defendant argues that Plaintiff lacks standing to bring this lawsuit because the purchase agreement for the aircraft was never assigned to Plaintiff. Alternatively, Defendant argues that if the purchase agreement was assigned to Plaintiff, then Plaintiff defaulted on a separate written agreement between Plaintiff and Defendant that mapped out specific payment terms. Defendant also argues that any *other* document extending the final payment date was fabricated.

Plaintiff counters that (1) a valid assignment under Florida law was made; (2) the final payment date for the aircraft was extended; and (3) Defendant breached the purchase agreement by denying Plaintiff access to the aircraft's maintenance and log books. Plaintiff also claims that World Jet fraudulently induced Plaintiff to purchase the aircraft when World Jet lacked ownership. This lack-of-ownership theory is also asserted in Zuma's breach of contract claim.

---

currently representing Plaintiff. [ECF No. 60]. The Court determined that Vazquez is a necessary witness and disqualified him from representing Plaintiff at trial. [ECF No. 96]. Aside from that, Defendant World Jet of Delaware, Inc. ("Defendant" or "World Jet") also claims that Plaintiff's counsel submitted a fraudulent document and committed spoliation of the evidence. [ECF Nos. 88; 96]. These events and accusations are atypical from the more-traditional "he said/she said" swearing match that this Court usually confronts in a lawsuit about a contract's formulation or interpretation. World Jet's motion for sanctions for fraud on the court is still pending. [ECF No. 88].

As outlined above, there are still significant factual disputes remaining in this case. Because of this, the Court **denies** in large part Defendant's summary judgment motion as these factual determinations are reserved for a jury at trial.

I.     **Background**

Plaintiff sued Defendant for the state-law claims of breach of contract, accounting, and fraudulent inducement, and sued World Jet's President, Defendant Don Whittington ("Don") for fraudulent misrepresentation. [ECF No. 1]. However, Don was dismissed as a defendant for lack of service. [ECF Nos. 1, p. 8; 16]. World Jet filed an answer and affirmative defenses to the Complaint. [ECF No. 6]. World Jet also moved to strike Zuma's expert witness disclosure, report, and the trial testimony of proposed expert Mark Connell, a motion which the Court granted. [ECF Nos. 54; 93].

World Jet now moves for summary judgment on the remaining counts, claiming that it is not liable and that Zuma is not entitled to damages. [ECF No. 55]. World Jet filed a statement of undisputed facts. [ECF No. 57]. In support of its motion, World Jet filed the affidavits of Don; William Whittington ("William"); the General Manager of World Jet, Steven Dennis ("Dennis"); Zuma's discovery responses; and the transcript and exhibits from Zuma's designated corporate representative's, Keith Silverstein ("Silverstein), deposition.  [ECF Nos. 55-1; 55-2; 55-3; 55-5; 55-7; 55-9; 56].

Zuma filed an opposition response to World Jet's summary judgment motion. Embedded in this 59-page document was its statement of disputed facts and supporting

exhibits.[4] [ECF No. 61]. Zuma included JC Partners Corp. ("JC") president, Luis Urdaneta's ("Urdaneta"), and Vazquez's affidavits. [ECF No. 61, pp. 14-16, 19-24]. Zuma also filed an email concerning a bill of sale for the aircraft, the bill of sale, a letter sent from Vazquez to Don, and other documents and contracts relating to the purchase of and payment for the aircraft. [ECF No. 61, pp. 17-18, 25-32, 40-59]. In Zuma's response to World Jet's summary judgment motion, Zuma withdrew its accounting count and its request for attorneys' fees. [ECF No. 61, pp. 2, 11].

Zuma also filed an amended witness list, adding Vazquez as a fact witness. [ECF No. 59], which World Jet moved to strike. [ECF No. 60]. After reviewing the fully briefed motion, the Court denied Zuma's motion but disqualified Vazquez from representing Zuma at trial. [ECF Nos. 66; 71; 77; 96].

World Jet filed its reply to Zuma's opposition response and included the transcripts from the depositions of Vazquez, the former president of Zuma (Jesus Camargo), Silverstein, and Urdaneta. [ECF Nos. 85; 85-1; 85-2; 85-3; 85-4; 85-5]. World Jet included in its reply a motion to strike Urdaneta's and Vazquez's affidavits, which the Court denied. [ECF Nos. 85; 86; 89; 90; 94].

Although World Jet has also filed a sanctions motion regarding Zuma's alleged fabricated document extending the final payment deadline for the aircraft, the Court

---

[4]     The statement of undisputed facts appears at pages 33-39 of Zuma's response. [ECF No. 61, pp. 33-39].

4

will reserve its ruling on that motion for a separate order. This Order deals exclusively with World Jet's summary judgment motion.

## II.    Facts

### A.    Undisputed Facts

JC entered into a purchase agreement with World Jet to purchase the aircraft ("Purchase Agreement"). [ECF Nos. 1-1; 57, p. 1; 61, p. 33]. JC made some payments toward purchasing the aircraft, and the aircraft was delivered to JC in September 2011. [ECF Nos. 55, pp. 2, 4; 61, pp. 14-16]. JC did not pay the remaining amounts due under the Purchase Agreement. [ECF Nos. 55, pp. 2, 4; 61, pp. 14-16].

It is undisputed that there is no written assignment of the Purchase Agreement indicating that JC assigned to Zuma the rights to buy the aircraft from World Jet. [ECF Nos. 57, p. 1; 61, p. 33].

However, there is a written agreement between World Jet and Zuma, dated October 25, 2013 ("October 25th Agreement"), where the parties agreed to payment terms for the remaining amounts due for the aircraft. [ECF No. 1-2]. The October 25th Agreement states that $713,401.40 was the remaining balance for the aircraft purchase. [ECF No. 1-2].

The October 25th Agreement states that Zuma would pay World Jet $200,000.00 as a partial payment for the aircraft on November 9, 2013, (a check in that amount was in World Jet's possession on the day of signing) and the remainder would be due on

December 21, 2013. [ECF No. 1-2]. The October 25th Agreement also states that "if the balance is not paid in full, the aircraft will be repossessed and the [Purchase Agreement] will be null and void" and if "a default does ensue, all monies paid to [World Jet] will be retained for default of the agreement." [ECF No. 1-2].

The balance of the payment was not made on or before December 21, 2013. [ECF Nos. 57, p. 4; 61, pp. 35-36].

The parties agree that World Jet would not convey ownership of the aircraft to Zuma until Zuma paid World Jet the full remaining balance of the purchase price. [ECF Nos. 57, p. 7; 61, pp. 37-38].

### B. Disputed Facts

#### Did JC Assign the Purchase Agreement to Zuma?

World Jet claims that it never knew about, consented to, or assigned any rights to the aircraft to Zuma, let alone signed any agreement concerning an assignment. [ECF No. 57, p. 2]. World Jet claims the October 25th Agreement indicates that Zuma guaranteed payment for JC. [ECF Nos. 1-2; 57, p. 2].

Zuma claims instead that JC orally assigned to it the rights to the Purchase Agreement and that Zuma did not guarantee payment for JC. [ECF No. 61, pp. 33-34]. Zuma relies on Urdaneta's affidavit, which states that "JC Partners assigned the Plaintiff full use and rights available to JC Partners under the purchase agreement." [ECF No. 61,

6

p. 15]. Zuma claims that the October 25th Agreement "clearly states that Plaintiff was in operational control of the Aircraft[.]" [ECF No. 61, p. 34].

### Did World Jet Own the Aircraft when the October 25th Agreement Was Signed?

Zuma claims that World Jet sold it the aircraft, and took Zuma's $200,000 deposit, even though William (not World Jet) owned the aircraft at the time the October 25th Agreement was executed. [ECF No. 61, p. 37]. Zuma filed a bill of sale dated September 18, 2013 addressed to William that was executed and sent to the FAA. [ECF No. 61, pp. 37, 44].

But World Jet claims that "William Whittington never applied for registration of the Aircraft and never paid any money for the Aircraft" and that the bill of sale was sent to the FAA "by an escrow agent in error." [ECF No. 57, p. 6].

World Jet claims that the aircraft was not conveyed to William at all relevant times to this action and the aircraft was instead registered to World Jet at the United States Civil Aircraft Registry. [ECF No. 57, p. 6].

### Did Zuma Default on the October 25th Agreement or Was the Deadline for Final Payment Extended?

World Jet claims that Zuma defaulted on the Purchase Agreement by not rendering final payment by December 21, 2013, as indicated by the October 25th Agreement. [ECF No. 57, p. 4].

However, Zuma disputes the default assertion. It relies on a document on World Jet's letterhead that contains Don's signature to prove that the December 21, 2013 deadline for final payment set in the October 25th Agreement was extended ("Extension Document"). [ECF No. 1-3].

Zuma claims that Don drafted this document in the form of a letter, which states, "Mr. Ruperto Rosales of [Zuma] has agreed to pay between two & three hundred thousand dollars for the month of January, 2014 for the [aircraft]. The remaining balance which is approximately five hundred and fifty thousand dollars is to be paid on February 14, 2014." [ECF No. 1-3]. Zuma claims that it was "ready and able to make payment" on February 14, 2014. [ECF No. 61, p. 36].

Zuma also relies on Urdaneta's and Vazquez's affidavits in support of the extended-deadline theory. [ECF Nos. 61, pp. 16, 20-22]. Specifically, Zuma indicates in its statement of disputed facts that Vazquez "had specific conversations regarding closing the transaction between Plaintiff and World Jet on February 14, 2014, in which, World Jet made no mention of default or the alleged December 21, 2013 deadline[.]" [ECF No. 61, p. 35].

World Jet claims that it never agreed to any extension and the Extension Document "is a fabricated and fraudulent document, is not on the letter head of [World Jet], and the signature purporting to be that of [Don] is a forgery." [ECF No. 57, p. 4].

## Was Inspection of the Aircraft's Records Required?

World Jet claims that it did not breach any contract because "[i]nspection of the Aircraft and log books or maintenance records was not a condition precedent to the timely remittance of payment to [World Jet]." [ECF No. 57, p. 5]. Zuma disputes this statement and claims instead that "Plaintiff needed to verify the existence of the log books and other books and records of the airplane, as an airworthy aircraft is a condition of the Purchase Agreement." [ECF No. 61, p. 36].

Both parties agree that Vazquez met with Don on February 14, 2014. However, whereas World Jet claims that Vazquez demanded physical possession and custody of the log books and maintenance records of the aircraft, Zuma claims that Vazquez met with Don to ensure the existence of and to inspect the log books and maintenance records on the alleged extended closing date for payment. [ECF Nos. 57, p. 6; 61, p. 37].

## II.     Legal Standard

The Court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). When "the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial." *Scott v. Harris*, 550 U.S. 372, 380 (2007) (internal citation and marks omitted). If the movant establishes the absence of a genuine issue, then the non-movant must "do more

than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).

For issues on which the opposing party will have the burden of proof at trial, the movant can prevail by merely pointing out that there is an absence of evidence to support the non-movant's case. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986). "By its very terms, this standard provides that the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986) (emphasis in original). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Id.* at 248.

An issue of fact is genuine "if the record taken as a whole could lead a rational tier of fact to find for the nonmoving party." *Allen v. Tyson Foods, Inc.*, 121 F.3d 642, 646 (11th Cir. 1997). In applying this standard, the district court must view the evidence and all factual inferences in the light most favorable to the party opposing the summary judgment motion. *Id.* at 646 (internal citation omitted). Conclusory allegations, subjective beliefs, opinions, and unsupported assertions, however, are insufficient as a matter of law to withstand summary judgment. *See Mayfield v. Patterson Pump Co.*, 101 F.3d 1371, 1376 (11th Cir. 1996).

## III.    Analysis

### A.    Breach of Contract

In the Complaint, Zuma alleges that World Jet breached the Purchase Agreement because *William* (as opposed to World Jet) owned the aircraft -- which means that World Jet could not therefore sell Zuma an aircraft it did not own. Furthermore, Zuma claims that World Jet's refusal to provide it access to the aircraft's log books and maintenance records breached the Purchase Agreement's airworthiness requirement. [ECF No. 1, p. 6]. World Jet, in support of its contention that it is not liable to Zuma for breach of contract, argues that (1) Zuma lacks standing and is not a real party of interest; (2) the aircraft was not sold to William; and (3) denial of access to the log books and maintenance records was not a breach of the October 25th Agreement.[5]

---

[5]    In a footnote, World Jet contends that Silverstein had no knowledge in support of Zuma's claims, that his deposition testimony was hearsay, that he engaged in "discovery misconduct[,]"and that because of this, "Zuma did not produce a witness that could competently testify." [ECF No. 55, p. 5 n. 5].

The Undersigned is unclear on what World Jet is asking the Court to do. Is it asking the Court to strike Silverstein as a witness or is it asking the Court to sanction Zuma for this alleged "discovery misconduct?" [ECF No. 55, p. 5 n. 5]. Is this footnote actually a *de facto* and untimely motion to compel better answers at a deposition? Or is it merely a request for the Court to disregard the testimony of Silverstein in support of World Jet's contention that it is not liable for breach of contract? The Court will not guess at the relief World Jet may be seeking.

Regardless, based on Urdaneta's and Vazquez's affidavits, it is evident that Zuma produced witnesses with knowledge about the alleged breach of contract. World Jet has also had the opportunity to take Urdaneta's and Vazquez's depositions, in addition to Camargo's deposition. Based on the filings in connection with World Jet's

<u>Standing</u>

World Jet argues that Zuma lacks standing to sue for breach of contract because it is undisputed that (1) JC and World Jet are the only parties to the Purchase Agreement and (2) there is no written assignment of JC's rights under the Purchase Agreement to Zuma. [ECF No. 55, p. 8; 56, pp. 34-37; 61 p. 33].[6]

---

summary judgment motion, it is evident that Zuma has produced witnesses with knowledge of the events underlying this action.

The Court will not consider World Jet's argument about Silverstein because a footnote is the incorrect place for substantive arguments on the merits. *See Mazzeo v. Nature's Bounty, Inc.*, No. 14-60580, 2014 WL 5846735, at *2 n. 1 (S. D. Fla. Nov. 12, 2014) (not considering argument raised in a footnote). Courts have deemed arguments raised in this fashion waived. *See Mock v. Bell Helicopter Textron, Inc.*, 373 F. App'x 989, 992 (11th Cir. 2010) (deeming argument waived because it was raised in passing and only in a footnote). A party can, of course, mention in a footnote a substantive argument raised earlier or elsewhere in the body of the motion or memorandum. But it cannot drop a cryptic remark only in a footnote and expect a Court to evaluate it as a new substantive argument.

[6] However, Zuma also says in its response that the October 25th Agreement between Zuma and World Jet, where Zuma agreed to pay $713,401.40 to World Jet, was "the execution of the Assignment by Zuma." [ECF No. 61, p. 3]. Is Zuma now arguing that the October 25th Agreement is a *de facto* written assignment of JC's rights under the Purchase Agreement? The Court does not know because Zuma has not clearly articulated its position.

Zuma's statement here is confusing and seems directly contrary to paragraph 3 of Zuma's response to World Jet's statement of undisputed facts, where it "[a]greed that there was no written assignment of the Agreement." [ECF No. 61, p. 33]. Zuma cannot have it both ways: either there was a written assignment of the Purchase Agreement or there was not.

Standing is the constitutional requirement that asks "whether the litigant is entitled to have the court decide the merits of the dispute or of particular issues." *Warth v. Seldin*, 422 U.S. 490, 498 (1975); s*ee Nedeau v. Gallagher*, 851 So. 2d 214, 215 (Fla. 1st DCA 2003) ("Standing depends on whether a party has a sufficient stake in a justiciable controversy, with a legally cognizable interest which would be affected by the outcome of the litigation" and the "interest cannot be conjectural or merely hypothetical" and "the claim should be brought by, or on behalf of, the real party in interest.") (internal citations omitted).

World Jet also argues that because Zuma is not a party to the Purchase Agreement, the sole allegedly valid contract, Zuma does not have a cognizable interest that would affect the outcome of the litigation. Essentially, because there is no *written*

---

Even so, the undisputed evidence points to the fact that there was no written assignment, including Zuma's repeated acknowledgment that there was no writing, which is evident in Vazquez's and Urdaneta's affidavits; Zuma's deposition transcript; and Zuma's response to World Jet's statement of undisputed facts, etc.

Thus, the Court interprets Zuma's vague and possibly inconsistent statement above to mean that the October 25th Agreement was World Jet's written **acknowledgment** of JC's **oral assignment** of the Purchase Agreement to Zuma. Stating that there is evidence that World Jet acknowledged the oral assignment is entirely different from stating that the October 25th Agreement is *the* assignment. Either way, World Jet disputes the assignment's legal validity.

In any event, the parties have not briefed the Court about whether World Jet's acknowledgment (or lack thereof) would affect the validity of the assignment. The Court will therefore not consider this potential argument to determine standing.

document where JC assigned its rights under the Purchase Agreement to Zuma, World Jet assumes that there is *no* valid assignment.

Under Florida law, to state a cause of action for breach of contract, the movant must demonstrate the existence of a contract which it has a right to enforce, breach of that contract, and damages flowing from such breach. *Abbott Labs., Inc. v. Gen. Elec. Capital*, 765 So. 2d 737, 740 (Fla. 5th DCA 2000); *Carpenter Contractors of Am., Inc. v. Fastener Corp. of Am., Inc.*, 611 So. 2d 564, 564 (Fla. 4th DCA 1992).

### Factual Disputes about the Assignment

To dispute World Jet's contention that Zuma lacks standing, Zuma filed Urdaneta's affidavit, where the president of JC avers that JC "assigned to Plaintiff full use and rights available to [JC] under the purchase agreement." [ECF No. 61, p. 15]. Zuma claims that JC's oral assignment is sufficient to give it standing to sue for breach of contract because it acquired all of JC's rights under the Purchase Agreement, and thus, now stands in JC's shoes as a party. [ECF No. 61, pp. 4, 15-16].

World Jet submits factual evidence, emails between Urdaneta and Zuma regarding the aircraft's repairs that were sent after the October 25th Agreement, indicating that JC had not given up its rights under the Purchase Agreement. [ECF No. 55, pp. 8-9]. However, in its response, Zuma offers other emails between World Jet and Zuma, also after the October 25th Agreement, indicating that Zuma had control over the aircraft as the assignee under the Purchase Agreement. [ECF No. 61, pp. 4, 17].

Also, to contradict Urdaneta's affidavit, indicating there was an assignment, World Jet submits Steven Dennis' affidavit, indicating there was not an assignment. [ECF No. 55-3, p. 2].

These are all factual disputes which a fact finder (not a judge in a summary judgment order) must determine at trial. However, if the Court assumes that the oral assignment occurred but the oral assignment is invalid under Florida law, then there is no need for this case to go to a jury.

Thus, the Court must consider World Jet's **legal** argument and determine whether under Florida law an oral assignment of an aircraft purchase agreement violates the statute of frauds. If it does, then Zuma would lack standing to sue for breach of contract. If it does not, then World Jet is not entitled to summary judgment on this basis. As explained below, Florida law does not bar oral assignments of otherwise valid contracts.

### *Statute of Frauds*

An aircraft is a "good" under the Florida Uniform Commercial Code. Thus, the applicable statute of frauds is Florida Statute § 672.201(1). Section 672.201(1) provides

> Except as otherwise provided in this section a contract for the sale of goods for the price of $500 or more is not enforceable by way of action or defense unless there is some writing sufficient to indicate that a contract for sale has been made between the parties and signed by the party against whom enforcement is sought or by his or her authorized agent or broker. A writing is not insufficient because it omits or incorrectly states a term agreed upon but the contract is not enforceable under this paragraph beyond the quantity of goods shown in such writing.

Fla. Stat. § 672.201(1).

World Jet claims that under the statute of frauds, the Purchase Agreement "cannot be orally modified," which it argues would include JC's assignment of its rights to Zuma. [ECF No. 55, p. 7, (citing *McCollum Aviation, Inc. v. CIM Associates, Inc.*, 446 F. Supp. 511 (S.D. Fla. 1978)]. However, Zuma does not claim that there was an oral *modification* of the Purchase Agreement. Instead, it argues that its agreement with JC was an oral *assignment* of the Purchase Agreement.

An assignment has been defined as "a transfer or setting over of property, or of some right or interest therein, from one person to another." *Cont'l Cas. Co. v. Ryan Inc. E.*, 974 So. 2d 368, 376 (Fla. 2008) (internal quotation omitted). Essentially, it is the "voluntary act of [t]ransferring an interest." *DeCespedes v. Prudence Mut. Cas. Co.*, 193 So. 2d 224, 227 (Fla. 3d DCA 1966) Once transferred, the assignor no longer has a right to enforce the interest because the assignee has obtained all "rights to the thing assigned." *Price v. RLI Ins. Co.*, 914 So. 2d 1010, 1013–14 (Fla. 5th DCA 2005) (quoting *Lauren Kyle Holdings, Inc. v. Heath–Peterson Constr. Corp.*, 864 So. 2d 55, 58 (Fla. 5th DCA 2003)). Zuma, as the assignee, claims that it has acquired all the rights of the assignor, JC, under the Purchase Agreement.

In support of the oral assignment's validity in this case, Zuma cites cases where oral assignments of service contracts and rental agreements were upheld under Florida law. *Boulevard Nat'l Bank of Miami v. Air Metal Indus., Inc.*, 176 So. 2d 94, 97–98 (Fla.

1965) (finding that written assignment of an account receivable is not required under Florida law); *Mangum v. Susser*, 764 So. 2d 653, 655 (Fla. 1st DCA 2000) ("as to the 'unlawful' assignment issue [of the lease agreement], [defendant] has cited no authority (and our own research has found none) which requires, as [defendant] contends, that the assignment be in writing to be 'lawful.'"); *see also Stewart v. Hooters of Am., Inc.*, 432 F. App'x 903, 905–06 (11th Cir. 2011) (holding that the district court did not err in finding a valid oral assignment of a services contract under Florida law).

In these cases, the lack of formality of the assignment is dependent on the validity of the underlying contract. For instance, in *Mangum,* the First District Court of Appeal found that the oral lease for a rental property that extended beyond one-year did not violate the statute of frauds, thus an oral assignment of this valid lease was also permissible. 764 So. 2d at 655. In *Stewart*, the Eleventh Circuit held that "Florida law requires written assignments only when specified by either contract or by statute[,]" and in that case, because, the "original contract was in writing in compliance with the Statute of Frauds[,]" the oral assignment was also valid. 432 F. App'x at 906 n. 3.

The Court agrees with Zuma that Florida law does not require written assignments where the underlying contract is otherwise valid. However, the cases cited by Zuma are not governed by Article II of the UCC, which involve sale of goods contracts. Although the Court was unable to find a Florida-specific case, an opinion from the First District Court of Appeals of Indiana is persuasive on this issue. In *First*

*National Bank of Milltown v. Schrader*, the Indiana Appellate Court held that no formality is required for an assignment of a retail installment contract, which was governed by Article II of the UCC, and that such assignments for sale of goods contracts may be oral. 176 Ind. App. 391, 394, 375 (1978). Thus, the Court finds that Florida law regarding the informality of assignments is equally applicable to sale of goods contracts. Therefore, World Jet is incorrect that the alleged assignment, based solely on its oral nature, violates Florida law.

### World Jet's Impermissible FAA Recordation Argument

Instead of citing cases to support its argument that an oral assignment is *per se* invalid under Florida law, World Jet's reply sets forth a completely *different* argument that focuses on an aircraft's special recordation requirements. World Jet states that "[w]hile an interest in an ordinary chattel may, perhaps, be assignable orally, that is not the case with aircraft." [ECF No. 85, p. 6]. World Jet explains that "[a]ircraft are regulated by statute. §329.01, Fla. Stats. and §329.10, Fla. Stats" and that "14 CFR §47.3 mandates registration and an aircraft must be registered in the name of the owner, 49 USC §44101- 44103; 14 CFR §47.3(b) & 14 CFR §47.5(b)[.]" [ECF No. 85, p. 6]. World Jet argues, "[u]ntil an interest affecting ownership of a civil aircraft is recorded in the federal registry, it is valid only against those with actual notice. See: 49 U.S.C. § 44108(a)." [ECF No. 85, p. 6].

However, the Court cannot consider this argument -- that the assignment was invalid because it was not written and recorded as required by federal regulations -- because it was not, for all practical purposes, asserted in World Jet's original motion. Thus, Zuma did not have the opportunity to properly respond to this recordation argument. *Owens v. Bureau of Prisons*, 255 F. App'x. 383, 383 n. 4 (11th Cir. 2007) (affirming dismissal of habeas petition and holding that "we decline to address the new arguments that are presented for the first time in his reply brief") (citing *United States v. Martinez*, 83 F.3d 371, 377 n. 6 (11th Cir. 1996)); *United States v. Matute*, No. 06-20596-CR, 2013 WL 6384610, at *2 (S.D. Fla. Aug. 20, 2013) (finding that reply violated Southern District of Florida Local Rule because it improperly raised new and additional arguments in support of the original motion), *report and recommendations adopted*, 2013 WL 6212170 (S.D. Fla. Nov. 27, 2013); S.D. Fla. L. R. 7.1(c) ("reply memorandum shall be strictly limited to rebuttal of matters raised in the memorandum in opposition").

To be sure, the recordation argument was briefly mentioned in a footnote in World Jet's motion: "It is also noteworthy that Zuma never recorded any instrument documenting its claimed interest in the aircraft with the FAA (see 14 CFR §47.11(a)). As such, any claimed interest of Zuma cannot be recognized." [ECF No. 55, p. 8 n. 7]. But as the Court has previously mentioned in this Order, burying a substantive argument in a footnote (only) is impermissible and waives the argument. *Mazzeo*, 2014 WL 5846735, at *2 n. 1; *see also Mock*, 373 F. App'x at 992.

The text of the motion includes only the statement that "Zuma did not file any instrument in the Civil Aircraft Registry maintained by the FAA documenting any claimed interest in the Aircraft (Zuma Depo., P. 37, L. 12 – 24); which Zuma could have done in accordance with 14 CFR §47.5(d) as a purported assignee." [ECF No. 55, p. 8]. The statement that Zuma *could have* recorded the assignment does not clearly and unequivocally assert that Zuma *must have done* so to have a valid assignment, and World Jet does not cite any law stating this much in the text of its motion.

Because World Jet has failed to assert in its *motion* additional arguments to the assignment's purported legal invalidity,[7] World Jet has not met its burden of proving entitlement to summary judgment based on Zuma's alleged lack of standing under Florida law.

<u>Bill of Sale to William</u>

World Jet next contests Zuma's allegation that World Jet breached the Purchase Agreement because it purported to sell the aircraft, and took Zuma's $200,000 deposit, when it did not own the aircraft. Zuma argues that *William* (not World Jet) owned the aircraft when the October 25th Agreement was executed.

Specifically, paragraph 19 of the Complaint states that "according to a title search of the FAA records, World Jet had executed an Aircraft Bill of Sale on September 18,

---

[7]     Because the Court has determined that an oral assignment is generally permissible under Florida law and World Jet has not proven entitlement to summary judgment based on standing, there is no need for the Court to consider Zuma's alternative argument that an equitable assignment occurred.

2013, to a certain William Whittington (assumed to be a family member of D. Whittington). Said Bill of Sale was filed with the FAA Registry as Doc. ID# 0375 as early as October 17, 2013 to William Whittington evidencing transfer [of] title of the Aircraft[.]" [ECF No. 1, p. 5; 1-4]. Zuma also filed the bill of sale with its response to World Jet's summary judgment motion. [ECF No. 61, p. 44].

World Jet claims that the title search report produced by the vendor AEROtitle is hearsay and, despite Zuma's contention, it actually proves that World Jet was the registered owner of the aircraft, as it explicitly says "Registered Owner: World Jet of Delaware, Inc." [ECF Nos. 1-4, p. 1; 55, p. 10]. World Jet also contends that the report says that a registration application must be filed to effectuate a change in the registration record. World Jet argues that this language in the title search report is consistent with the substantive requirements to effectuate a change of registration, 14 CFR 47.5 & 47.31, which require both the filing of a bill of sale *and* a registration application. [ECF No. 55, p. 10]. World Jet argues that the aircraft was never registered to William because William never applied for registration, which is confirmed by William's affidavit. [ECF Nos. 55, pp. 10-11; 55-2, pp. 1-2]. World Jet also says that the bill of sale was sent to the FAA in error by an escrow agent. [ECF No. 55-1, p. 6].

In response, Zuma takes the position that there is no requirement to register an aircraft for the sake of proving ownership, and that a registration is required only to *operate* the aircraft. [ECF No. 61, p. 7]. Zuma also submits an email that Barbara

Kennard, a broker liaison of Amstal Corporation, sent to World Jet on October 24, 2013, the day before the October 25th Agreement was signed, regarding the bill of sale addressed to William. [ECF No. 61, p. 18]. Zuma claims that this email, and World Jet's lack of response to it (as none was produced in discovery), proves that World Jet did not dispute that William owned the aircraft. [ECF No. 61, p. 7].

Based on the AEROtitle search results, the bill of sale, and Ms. Kennard's email, World Jet's argument is not convincing. It is clear that there are ample factual and legal disputes regarding the ownership of the aircraft. Consequently, World Jet is not entitled to summary judgment on this point.

Denial of Access to Log Books and Maintenance Records

***Parol Evidence Rule***

World Jet next argues that denying access to the aircraft's log books and maintenance records could not possibly amount to a breach because Zuma had no right, contractual or otherwise, to access these records. World Jet explains that the right to an inspection was not a provision in the Purchase Agreement or the October 25th Agreement.[8] It argues that the Court would impermissibly violate the parol evidence rule if it were to add this provision into the agreements where none exists.

---

[8]     To be consistent with its argument that the Purchase Agreement was not assigned to Zuma, World Jet describes the October 25th Agreement as the "Guaranty Agreement."

The parol evidence rule is "not a rule of evidence, but rather is a substantive rule of law." *Knabb v. Reconstruction Fin. Corp.*, 144 Fla. 110, 130 (1940). Where a written agreement is unambiguous, the parol evidence rule bars the introduction of extrinsic evidence that would contradict or affect the construction of the document. *Olive v. Tampa Educ. Cable Consortium*, 723 So. 2d 883, 884 (Fla. 2d DCA 1998) (citing *Sears v. James Talcott, Inc.*, 174 So. 2d 776 (Fla. 2d DCA 1965)). However, parol evidence is admissible to prove the elements of an agreement where the writing is facially ambiguous. *Newbern v. Am. Plasticraft, Inc.*, 721 So. 2d 351, 352 (Fla. 2d DCA 1998).

Zuma is not asking the Court to consider extrinsic evidence to rewrite, alter, or add to the Purchase Agreement or the October 25th Agreement. Instead, Zuma agrees that the Purchase Agreement unambiguously and unequivocally states that the "aircraft shall be delivered in an airworthy condition." [ECF Nos. 1-1, p. 1; 61, pp. 8-9].

Zuma claims that under FAA regulation 14 C.F.R. 91.403, maintenance records of an aircraft are required to certify and continue the airworthiness of an aircraft. [ECF No. 61, pp. 7-8]. This regulation states that "the owner or operator of an aircraft is primarily responsible for maintaining that aircraft in an airworthy condition[.]"14 C.F.R. 91.403. Zuma claims that "without the opportunity to have absolute confirmation that these records exist, Zuma was unable to confirm whether or not World Jet was in compliance with the conditions of the Purchase Agreement by delivering an airworthy aircraft[.]" [ECF No. 61, p. 8]. It is undisputed that World Jet did not permit Zuma to inspect the

maintenance records and log books. Zuma claims that it could not close on the aircraft purchase because of World Jet's breach.

The Court agrees with Zuma that the parol evidence rule is inapplicable here because Zuma is not asking the Court to consider any extrinsic evidence to alter the interpretation of an unclear contract term. The airworthiness provision is unequivocally in the Purchase Agreement, and as I previously determined, the oral assignment, if one exists, which is yet to be determined by a jury, is not invalid as a matter of law. Further, World Jet does not contest in its motion or reply that Zuma's interpretation of the "airworthiness" provision and what is required to prove airworthiness is erroneous as a matter of law. World Jet merely states that the Court cannot rewrite the agreements to "make a better deal for than [sic] was made by the parties." [ECF No. 85, p. 4].

By recognizing that a contract provision may support Zuma's breach of contract claim, the Court is not rewriting the agreement or making a dispositive ruling that World Jet breached the contract. Instead the Court is simply finding that World Jet has not met its burden of proving entitlement to summary judgment on the breach of contract claim based on the parol evidence rule.

### Default

World Jet alternatively claims that there was no need for it to permit Zuma to inspect the aircraft's maintenance and log books because by February 14, 2014, the date of the inspection request, Zuma had *already* defaulted on the October 25th Agreement.

World Jet states that Zuma was in default because the October 25th Agreement required the balance of the aircraft to be paid by December 21, 2013. It is undisputed that the full amount owed for the aircraft was not remitted on that date.

The October 25th Agreement states that "if the balance [due for the aircraft] is not paid in full, the aircraft will be repossessed and the [Purchase Agreement] will be null and void[,]" and if "a default does ensue, all monies paid to [World Jet] will be retained for default of the agreement." [ECF No. 1-2]. As a result, World Jet claims that it is not liable because "[i]nspection of the Aircraft and log books or maintenance records was not a condition precedent to the timely remittance of payment to [World Jet]." [ECF No. 57, p. 5].

Zuma disputes the default assertion. It relies on the Extension Document to prove that the December 21, 2013 deadline for final payment set in the October 25th Agreement was extended to February 14, 2014. [ECF No. 1-3]. This document, seemingly drafted by Don, states, "Mr. Ruperto Rosales of [Zuma] has agreed to pay between two & three hundred thousand dollars for the month of January, 2014 for the [aircraft]. The remaining balance which is approximately five hundred and fifty thousand dollars is to be paid on February 14, 2014." [ECF No. 1-3]. Plaintiff claims that on February 14, 2014, the day it sought inspection of the maintenance records and log books, it was "ready and able to make payment" in compliance with the Extension Document. [ECF No. 61, p. 36].

Zuma also relies on Urdaneta's and Vazquez's affidavits in support of the extended deadline. [ECF No. 61, pp. 16, 20-22]. Specifically, Zuma indicates in its statement of disputed facts that Vazquez "had specific conversations regarding closing the transaction between Plaintiff and World Jet on February 14, 2014, in which, World Jet made no mention of default or the alleged December 21, 2013 deadline[.]" [ECF No. 61, p. 35].

But World Jet disputes all of this, contending that it never agreed to any extension and that the Extension Document "is a fabricated and fraudulent document, is not on the letter head of [World Jet], and the signature purporting to be that of [Don] is a forgery." [ECF No. 57, p. 4]. It relies on Don's affidavit, where he avers that the Extension Document "is a forgery. I know my own signature and the signature [of the document] is not my signature and I did not authorize anyone to sign [it]." [ECF No. 55-1, p. 4].

In World Jet's reply, it states that although it requested the original Extension Document, which Zuma's representatives and lawyers and Urdaneta promised to provide, the original Extension Document has been lost or destroyed. [ECF No. 85, pp. 3-4]. World Jet states that although the Extension Document is "a crucial document, one that would be dispositive of the claimed payment extension, [and] a document that is disputed, [it] is no longer available for inspection and testing." [ECF No. 85, p. 4].

In sum, Defendant is claiming that Plaintiff defaulted on an agreement by failing to timely pay the remainder of the monies owed for the aircraft, that the Extension Document is falsified, and that Plaintiff's other supporting evidence (affidavits, testimony, etc.) is perjured or fabricated. Predictably, Plaintiff argues the opposite: that (1) the Extension Document is a true agreement; (2) the statements made supporting this agreement are also truthful; and (3) the date it attempted to complete payment was timely.

Deciding whether to believe Don's averments over that of Urdaneta's and Vazquez's involves resolving a factual dispute. This is for the jury to do, not for the Court on summary judgment.

To be sure, a jury *could* conclude that Plaintiff has no credibility and that its contentions about the Extension Document's existence are without merit because, perhaps in part, the original Extension Document cannot be located, which prevents Defendant from employing a handwriting expert to explore the Extension Document's authenticity. However, a jury might also conclude otherwise and find Plaintiff's story credible, based in part on the testimony and first-knowledge of its own lawyer, Vazquez. "The contradiction presents a classic swearing match, which is the stuff of which jury trials are made." *Feliciano v. City of Miami Beach*, 707 F.3d 1244, 1253 (11th Cir. 2013).

Therefore, based upon the Extension Document submissions by Zuma (contradicting World Jet's own version of a scenario generating a purported default by Zuma), the Court finds that World Jet's failure to allow Zuma to inspect the aircraft's records could reasonably sustain a jury verdict for the non-movant on the breach of contract claim. *See Celotex*, 477 U.S. at 322-23; *Tyson*, 121 F.3d at 646.

## B.    Fraudulent Inducement

Zuma includes a count for fraudulent inducement based on World Jet's representation "to Zuma that it would obtain ownership to the aircraft upon making a $200,000 payment and following through with the terms of the Purchase Agreement, including paying the remaining amount due." [ECF No. 61, p. 10].

The elements of a claim for fraudulent inducement are: "'(1) a false statement of material fact; (2) the maker of the false statement knew or should have known of the falsity of the statement; (3) the maker intended that the false statement induce another's reliance; and (4) the other party justifiably relied on the false statement to its detriment.'" *Sena v. Pereira*, 179 So. 3d 433, 435–36 (Fla. 4th DCA 2015) (quoting *Prieto v. Smook, Inc.*, 97 So. 3d 916, 917 (Fla. 4th DCA 2012)).

Here, Zuma contends that the alleged fraudulent statement (i.e., that World Jet owned the aircraft) occurred in both the Purchase Agreement and the October 25th Agreement. [ECF Nos. 1-1; 1-2; 61, p. 10]. Zuma claims that World Jet "made this representation knowing that it was false, as [World Jet] had consummated the sale of

the Aircraft to a third party eight days before making the representation to Plaintiff on October 25, 2013." [ECF No. 1, p. 8]. The alleged third party buyer that Zuma refers to in the Complaint is William, as evidenced by the bill of sale and the AEROtitle search record. [ECF Nos. 1-4; 61, p. 44].

Zuma claims that World Jet intended for it to rely on the agreements' indication that it had title to the aircraft[9] to induce the $200,000 deposit. Indeed, Zuma says that it would have not entered into the October 25th Agreement and paid the deposit to its detriment if it had known that World Jet did not own the aircraft. As previously discussed, World Jet disputes this allegation; it contends that the aircraft was not conveyed to William at all relevant times and that the aircraft was instead registered to World Jet at the United States Civil Aircraft Registry. [ECF Nos. 55, pp. 10-11; 55-1, p. 6; 55-2, pp. 1-2].

To prevail on summary judgment, World Jet must prove that, based on the undisputed facts, Zuma cannot prevail on a fraudulent inducement claim at trial. World Jet's summary judgment position is that the fraudulent representation Zuma purportedly relied on was not attributed to any particular person and that Zuma has testified that the transfer of the ownership would not occur until full payment was rendered. [ECF No. 56, p. 86]. In fact, Zuma agrees with World Jet's statement. Zuma

---

[9]    The Court examined the agreements and finds that the alleged indication that World Jet owned the aircraft is implicit in the agreements. There is no specific provision explicitly stating in precise terms that World Jet has title to the aircraft. Nevertheless, the context establishes that World Jet was in fact making this representation.

states that it knew that World Jet would not transfer ownership until Zuma paid World Jet the remainder of the purchase price owed. [ECF No. 61, pp. 37-38].

It is undisputed that at the time the alleged fraudulent statements were made in the agreements, the full purchase price for the aircraft was not paid. Because of this, World Jet says that Zuma cannot prove the *reliance* element of fraudulent inducement because it is undisputed that Zuma did not expect to own the aircraft before full payment was rendered.

The Court disagrees with World Jet's interpretation of the Complaint. It is clear from the Complaint and Zuma's response to the summary judgment motion that Zuma's position is that it relied on World Jet's statements in the Purchase Agreement and October 25th Agreement as to ownership of the aircraft. Based on this assurance, Zuma remitted the $200,000 deposit to World Jet. Thus, Zuma's reliance allegation is not disproven by the undisputed fact that the deal would not be completed until full payment was rendered.

After the October 25th Agreement was executed, Zuma was committed to purchasing the aircraft and putting down actual money. Stated differently, Zuma's skin was in the game before the Purchase Agreement was fully performed. Furthermore, World Jet does not cite any applicable legal authority to support its theory -- where a deal is only **partially** performed, a buyer's reliance on a seller's fraudulent statements for entering into an agreement is vitiated, and, as a result, the buyer's deposit is

unrecoverable, notwithstanding a seller's wrongdoing. Accordingly, the Court is not persuaded by World Jet's argument.

World Jet also argues for the first time in the reply that the fraudulent inducement claim is barred by Florida's independent tort doctrine because the fraud claim is not independent of the breach of contract claim. *See Lewis v. Guthartz*, 428 So. 2d 222, 224 (Fla. 1982) (holding that there must be a tort "distinguishable from or independent of [the] breach of contract" for a party to bring a valid claim in tort based on a breach in a contractual relationship).

As the Court has previously discussed in this Order, it will not consider arguments raised for the first time in a reply memorandum. *Owens,* 255 F. App'x. at 383 n. 4 (11th Cir. 2007); *Matute*, 2013 WL 6384610, at *2; S.D. Fla. L. R. 7.1(c). Therefore, the Court will not consider World Jet's new independent tort doctrine argument.

Because there are material disputes of fact about World Jet's ownership of the aircraft, as indicated by the AEROtitle search record and the bill of sale and World Jet's and William's affidavits, and because Zuma submitted evidence to support its claim that it relied on World Jet's ownership of the aircraft before entering into the agreements, Zuma's fraudulent inducement claim cannot be disposed of in World Jet's favor in a summary judgment order.

### C.    Damages

World Jet seeks a ruling from the Court that there is no evidence to support a claim for damages. [ECF No. 55, pp. 19-20]. In making that argument, World Jet states that "Zuma did not know whether the Aircraft was capable of being utilized for the transportation of persons or cargo for hire or whether it was even equipped to conduct such operations[;]" Zuma could not articulate a basis for any claim of lost profits; and "Zuma has not identified an expert who will opine with respect to lost profits and the means by which any such lost profits would be calculated." [ECF Nos 43; 56, pp. 43, 117]. World Jet also says that Zuma is not entitled to damages because World Jet is not liable for breach of contract or fraudulent inducement.

In response, Zuma states that, based on the oral assignment, Zuma has a right to recover full damages under the Purchase Agreement, and the amount transferred to World Jet currently totals $1,650,000.00, which includes the amount JC already paid. [ECF No. 56, p. 116]. Zuma also states that it has personally paid $200,000 for acquiring the aircraft. [ECF No. 61, p. 8].

World Jet contests this amount in its motion and says Zuma has remitted only $164,000 to World Jet. [ECF No. 55, p. 20]. However, the Court is confused by this statement because World Jet's statement of undisputed facts represents that "other than the moneys (U.S. $200,000.00) referred to in [the October 25th Agreement], no further moneys were thereafter remitted to [World Jet] by Zuma." [ECF No. 57, p. 4]. These two

statements seem inconsistent, or, at the least, require further explanation from World Jet.

Defendant has therefore failed to discharge its burden on summary judgment by simply concluding that Plaintiff is not entitled to damages because Defendant is not liable and Plaintiff cannot establish damages at trial. *Clark v. Coats & Clark, Inc.,* 929 F.2d 604, 608 (11th Cir. 1991) ("it is never enough simply to state that the non-moving party cannot meet its burden at trial.").

Furthermore, there are factual disputes about whether Zuma is entitled to damages; what type of damages Zuma is entitled to; and, if damages are available, what amounts should be awarded. Thus, the Court finds that this case is not yet ready for a "no damages" determination on summary judgment. Instead, all the evidence, including the disputes of fact as to the existence of recoverable damages, must be presented and weighed by the jury. Therefore, the Court denies Defendant's motion for summary judgment on the issue of damages. *See Ultra-Images, LLC v. Franclemont,* No. 05-60538-CIV, 2007 WL 4557148, at *5–6 (S.D. Fla. Dec. 20, 2007) (denying defendants' motion for summary judgment on damages as premature without hearing all the evidence).

## IV.    Conclusion

The Court **denies** in large part Defendant's summary judgment motion on the breach of contract and fraudulent inducement claims and damages because these

determinations arise from disputed facts which must be evaluated by a jury at trial. However, the Court **grants** in small part summary judgment in favor of Defendant on Plaintiff's accounting claim and request for attorney's fees based on Plaintiff's voluntary withdrawal.

**DONE AND ORDERED** in Chambers, in Miami, Florida, on September 25, 2017.

Jonathan Goodman
UNITED STATES MAGISTRATE JUDGE

<u>**Copies Furnished to:**</u>
All Counsel of Record